# IN THE UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF NEW MEXICO

SECURITY INSURANCE COMPANY
OF HARTFORD,

        Third-Party Plaintiff,

vs.                                         No. CIV 04-1246 JB/ACT

CLOVIS INSURANCE CENTER, INC.,
d/b/a DESERT STATES INSURANCE,

        Third-Party Defendant.

## MEMORANDUM OPINION AND ORDER

**THIS MATTER** comes before the Court on the Third-Party Defendant Clovis Insurance Center, Inc.'s Motion Pursuant to Fed. R. Civ. P. 10(c), 12(c) and 19(a), filed March 18, 2005 (Doc. 67). The primary issues are: (i) whether Plaintiff Security Insurance Company of Hartford's ("SICH") claims for contribution and/or indemnity are barred as a matter of law; (ii) whether the assignment of claims under which SICH pursues this action is void in New Mexico as a matter of public policy; and (iii) whether Bell Gas should be joined as a necessary party under rule 19(a). Consistent with the Court's ruling at the hearing on this motion, and for the reasons given at the time of the hearing, the Court grants the motion in part and denies it in part. The Court will dismiss the contribution claim against Clovis. Because the motion and arguments presented at the hearing go beyond the pleadings, the Court will not dismiss the indemnity claim against Clovis at this time but will wait to address this issue on a motion for summary judgment or at trial. Finally, the Court will not join Bell Gas as a necessary party.

## FACTUAL BACKGROUND

This litigation arises out of SICH's issuance of insurance policies to Bell Gas through SICH's managing agent, Tesher Corporation and John Tessyman in March and April of 2002. See Second Amended Third-Party Complaint ¶ 7, at 2, filed March 14, 2005 (Doc. 64). SICH contends that, for a short time before March 18, 2002, Tessyman had limited authority under an agreement with SICH to solicit customers and accept premiums for insurance policies to be issued to insureds in the petroleum business, such as Bell Gas. See id. ¶ 5, at 2. This project was called "the Tesher Program." See id. ¶ 3, at 2.

SICH asserts that on March 18, 2002, it canceled the Tesher Program and terminated Tesher Corporation's authority to act on SICH's behalf.  See id. ¶ 4, at 2.  SICH directed Tesher Corporation and its principal, Tessyman, to discontinue any activities on SICH's behalf.  See id. Nevertheless, and without SICH's authorization, approval, or consent, Tesher and/or Tessyman continued to generate invoices and/or insurance binders for policies to be issued by SICH.  See id. ¶ 5, at 2.

Bell Gas, Inc. purchased insurance from SICH through the Tesher Program in March of 2002. See id.  Clovis Insurance Center, Inc, d/b/a Desert States Insurance was Bell Gas' broker in that purchase.  See id.  Tesher sent the invoice and/or binder to Clovis Insurance.  See id.  In connection with the purchase of the insurance, Premium Financing Services, Inc. ("PFS") financed part– seventy-five percent or $340,248.00–of the premiums.  See Complaint ¶¶ 8, 10, and 12, at 2-3, filed July 9, 2002 (Doc. 1).  SICH asserts that Bell Gas was responsible for paying any unfinanced premiums,

approximately $113,000.  See Transcript of Hearing at 27:23-28:2 (taken October 12, 2005).[1]  It is unclear how much money Bell Gas may have given to the Tesher Program.  See id.  PFS asserts that Sophie Elaine Kolb, a PFS employee, called SICH on April 1, 2002 to confirm that Tesher was in fact a managing agent authorized to accept premiums and issue policies on SICH's behalf, and a SICH employee confirmed that this information was true.  See Complaint ¶ 24, at 4.  SICH denies that this phone conversation took place.  See Amended Answer ¶ 16 at 4, filed August 4, 2003 (Doc. 19).

SICH asserts that Bell Gas, Clovis Insurance, and PFS completed a premium financing agreement on or around April 16, 2002, whereby PFS agreed to finance the premiums for the policy that Bell Gas thought it was purchasing from SICH.  See id. ¶ 7, at 2.  SICH further asserts that, as a part of this financing agreement, Bell Gas assigned its rights to collect any unearned or returned premiums to PFS.  See id. ¶ 9, at 2-3.  Under the terms of the premium financing agreement between Clovis Insurance and PFS, Clovis Insurance was PFS' agent for the purpose of issuing drafts on PFS' bank account to pay the premiums on the Bell Gas policy.  See Second Amended Third-Party Complaint ¶¶ 20-21, at 4.  On or around April 18, 2002, Clovis Insurance sent a $340,248.00 premium payment, dated April 20, 2002 and drafted on PFS' account, to Tesher.  See id. ¶ 8, at 2.

Clovis Insurance alleges that SICH received an application for insurance from Bell through Tessyman on or around March 15, 2002, three days before SICH canceled the Tesher Program.  See Transcript of Hearing at 14:2-6.  SICH sent Bell Gas Notices of Cancellation of SICH's insurance policies and a letter dated April 18, 2002.  See Second Amended Third-Party Complaint ¶ 24, at 5.  These documents purportedly indicated that SICH had not agreed to provide insurance for Bell Gas

---

[1]  The Court's citations to the transcript of the hearing refer to the court reporter's original, unedited version.  Any final transcript may contain slightly different page and/or line numbers.

and asked that Bell Gas advise SICH if Bell Gas believed it had procured insurance from SICH.  See id.; Letter from Brian Thibodeau to Bell Gas ("Thibodeau Letter")(dated April 18, 2005).  The letter provides:

> As agent for certain companies of the Royal and SunAlliance and as facilitator of the Tesher Program, the purpose of this letter is to clarify any potentially incorrect communications that you may have received in conjunction with possible offers or solicitations of insurance coverages directed to you, your agent or your organization.
>
> According to our records, no proposal, solicitation, invitation, quote or offer to bind coverage on any form of insurance was provided by or on behalf of any of the Royal and SunAlliance companies.
>
> If our information is incorrect or if you are in possession of any information that contradicts our understanding, please contact me immediately. . . .

See Thibodeau Letter.  Clovis contends that it is not clear from the letter what SICH means and that the letter does not inform Bell Gas that Tessyman had no authority to bind coverage or to collect premiums, nor does it tell Bell Gas that the policy is invalid.  While SICH relies on its April 18, 2002 letter to Bell Gas in support of its contention that Bell Gas and/or Clovis Insurance should have been on notice that Tessyman was no longer SICH's agent, that SICH had terminated him, and that Tessyman was not authorized to collect premiums, Clovis argues that the letter does not advise the recipient of these facts.  See Third-Party Defendant Clovis Insurance Center, Inc.'s Memorandum In Support Of Motion Pursuant to Fed. R. Civ. P. 10(c), 12(c), and 19(a) ("Memorandum in Support") at 7.

On either April 20, 24, or 25, 2002, Bell Gas contacted Thibodeau regarding the Notice of Cancellation.  See Second Amended Third-Party Complaint ¶ 25, at 5; Transcript of Hearing at 9:23-24, 10:5-10.  During that conversation, SICH asserts that Thibodeau informed Bell Gas that Tesher and/or Tessyman had no authority to accept premiums or to bind coverage on SICH's behalf.  See

-4-

Second Amended Third Party Complaint ¶ 25, at 5.  SICH further asserts that Bell Gas relayed this information to Clovis Insurance.  See id. ¶ 30, at 6.

SICH did not receive the premiums through Tessyman or Tesher Corporation.  See id. ¶¶ 19, 28, at 4, 6.  Tesher and/or Tessyman fraudulently converted the premium financing payment by cashing the check on or about April 25, 2002.  See id. ¶¶ 8, 27, at 2, 5-6.

## PROCEDURAL BACKGROUND

PFS initiated this litigation by filing a complaint against SICH in the United States District Court for the Western District of Missouri.  See Complaint.  PFS sought recovery of $884,632.55 in insurance premiums it had financed for Bell Gas and another client as a result of Tessyman's fraudulent conversion of the premium payments.  See id. ¶ 30 at 5.

SICH settled the disputes and claims that PFS asserted in its original Complaint for Damages. See Second Amended  Complaint ¶¶ 14, 15, at 3.  In connection with this settlement, SICH paid to PFS the sum of $735,000.00, which is not allocated in the Settlement Agreement.  See id. ¶14, at 3. The parties further dismissed with prejudice all claims by and between them in that litigation.  See id. ¶¶ 14-15, at 3-4 (referring to, but not attaching, the Settlement  Agreement).  The Settlement Agreement also assigns all of PFS' remaining claims arising out of the transaction to SICH.  See id. ¶ 15, at 3-4.  The Settlement Agreement selects Missouri law to govern the agreement.  See Settlement Agreement ¶ 10, at 6.

The Settlement Agreement by and between PFS and SICH releases only the claims by and between PFS and SICH and does not release Clovis Insurance from any claims or liabilities.  See Third-Party Complaint ¶¶ 14, 15 at 3-4, filed August 4, 2003 (Doc. 20); Settlement Agreement at 2-3.  In the Settlement Agreement, PFS "assigned all of its rights, claims, causes of action, damages and

costs it had against [Clovis Insurance], Maggie Anderson, its insurers, and affiliated companies arising [out] of the facts alleged in PFS' Complaint for Damages." Amended Third-Party Complaint ¶ 15, at 3-4, filed December 16, 2003 (Doc. 34).

Pursuant to that assignment, SICH filed a third-party complaint in the United States District Court for the Western District of Missouri. See generally Third-Party Complaint. The complaint filed against Clovis Insurance alleged negligent non-disclosure, constructive fraud, and breach of fiduciary duty. See id. SICH, "standing in the shoes" of PFS, seeks contribution and/or indemnification for the amount of the unearned premium that it paid back to PFS ($320,248.00), plus pre- and post- judgment interest, attorneys fees, and costs for having to defend the claims that PFS asserted and for having to bring these third-party claims against Clovis Insurance, and for such other relief as the Court deems just and proper under the circumstances. See id. The original third-party complaint included Bell Gas as a defendant, but the Amended and Second Amended Third-Party Complaints name Clovis Insurance as the only defendant. See id.; Amended Third-Party Complaint; Second Amended Third-Party Complaint. At the hearing on October 12, 2005, SICH suggested that because Bell Gas has known about this lawsuit for forty months and has chosen not to participate in any way, Bell Gas is likely not interested in the litigation. See Transcript of Hearing at 39:18-22.

Clovis Insurance moved to dismiss the action for lack of personal jurisdiction. The Honorable Howard F. Sachs, United States District Judge, provisionally granted that motion, allowing SICH to avoid dismissal by filing a motion to change venue within 30 days. See Order Granting Plaintiff's Motion to Change Venue at 1, filed October 26, 2004 (Doc. 51). SICH argued that the case should be transferred pursuant to 28 U.S.C. § 1406(a), which allows for a change in venue when a case is brought in an improper venue. See Plaintiff's Memorandum in Support of Motion to Transfer Venue

at 2, filed October 7, 2003 (Doc. 50).  Judge Sachs, however, transferred the case to New Mexico

under 28 U.S.C. § 1404(a), which allows transfer when venue is proper in the court where the action

was brought, but is nonetheless inconvenient for the parties.  See Order Granting Plaintiff's Motion

to Change Venue at 1.

SICH filed its Second Amended Third-Party Complaint in the United States District Court

for the District of New Mexico.  SICH asserts that it and Clovis Insurance are concurrent tortfeasors,

and SICH seeks both contribution and indemnification from Clovis Insurance.  See Second Amended

Third-Party Complaint ¶¶ 5, 8, 10, 11, 12.  SICH acknowledges that John Tessyman had been SICH's

agent with authority under an agreement with SICH "to solicit customers and accept premiums for

insurance policies to be issued to insureds in the petroleum business, such as Bell Gas, Inc."  Id. ¶ 3,

at 1-2.  Although SICH asserts that it had terminated Tessyman's authority, SICH acknowledges that

Tessyman continued to market and sell insurance and did, in fact, issue to Bell Gas insurance for

which Tessyman collected a premium.  See id. ¶ 5, at 2.

Alternately, Clovis Insurance moves the Court under rules 10(c), 12(c), and 19(a) of the

Federal Rules of Civil Procedure.  Clovis Insurance asks the Court for the following: (i) that, for the

purpose of its Motion for Judgment on the Pleadings and pursuant to rule 10(c), the Court consider

the PFS' Complaint for Damages, the Settlement Agreement, Release of Claims and Assignment, the

April 18, 2002 letter from SICH to Bell Gas and its enclosures as part of the pleadings; (ii) that the

Court dismiss the Second Amended Third-Party Complaint and each cause of action therein with

prejudice on the ground that, on the pleadings now before the Court, judgment should be so entered;

and (iii) alternatively, if the Court denies Clovis Insurance's Motion for Judgment on the Pleadings,

that the Court, pursuant to rule 19(a), find Bell Gas is a party needed for just adjudication and should be joined. <u>See</u> Memorandum in Support.

## LAW REGARDING RULE 10(c)

Rule 10(c) of the Federal Rules of Civil Procedure provides: "Statements in a pleading may be adopted by reference in a different part of the same pleading or in another pleading or in any motion. A copy of any written instrument which is an exhibit to a pleading is a part thereof for all purposes." Pleadings typically include complaints, answers, replies to counterclaims, third-party complaints, and third party answers. <u>See</u> Fed. R. Civ. P. 7(a).

## STANDARD FOR DECIDING RULE 12(c) MOTIONS

Rule 12(c) provides:

> After the pleadings are closed but within such time as not to delay the trial, any party may move for judgment on the pleadings. If, on a motion for judgment on the pleadings, matters outside the pleadings are presented to and not excluded by the court, the motion shall be treated as one for summary judgment and disposed of as provided in Rule 56, and all parties shall be given reasonable opportunity to present all material made pertinent to such a motion by Rule 56.

Fed. R. Civ. P. 12(c). Motions under rule 12(c) are typically made after the defendant files an answer, which closes the pleadings. The standard for deciding Rule 12(c) motions is the same as that for motions to dismiss under Rule 12(b). <u>See</u> <u>Nelson v. State Farm Mut. Auto. Ins. Co.</u>, 419 F.3d 1117, 1119 (10th Cir. 2005)(citing <u>McHenry v. Utah Valley Hosp.</u>, 927 F.2d 1125, 1126 (10th Cir. 1991)). In reviewing the motion, the court will "accept all well-pleaded factual allegations in the complaint as true and view them in the light most favorable to the nonmoving party." <u>Id.</u> A rule 12(c) motion must be converted into a motion for summary judgment if "matters outside the pleadings are presented to and not excluded by the court." Fed. R. Civ. P. 12(c).

Under certain circumstances, however, the court may consider the pending motion and any exhibits attached thereto.  "[I]f a plaintiff does not incorporate by reference or attach a document to its complaint but the document is referred to in the complaint and is central to the plaintiff's claim, a defendant may submit an indisputably authentic copy to the court to be considered on a motion to dismiss."  GFF Corp. v. Associated Wholesale Grocers, Inc., 130 F.3d 1381, 1384 (10th Cir. 1997). When the defendant attaches authentic copies of documents referenced in the complaint that are central to the plaintiff's claims, the court can consider the motion and those attachments without converting the motion into one for summary judgment. See id. at 1385.

## NEW MEXICO COMPARATIVE NEGLIGENCE LAW

### 1.    N.M.S.A. § 41-3-2C (1987)

Before 1982, New Mexico tort law followed the doctrine of joint and several liability, and common law did not allow for contribution among joint tortfeasors. See Rio Grande Gas Co. v. Stahmann Farms, Inc., 80 N.M. 432, 434, 457 P.2d 364, 366 (1969)("It is well settled that at common law there can be no contribution among joint tortfeasors. . . ").  The New Mexico Legislature adopted the Uniform Contribution Among Tortfeasors Act, N.M.S.A. §§ 41-3-1 to 41-3-8, in 1947 to give joint tortfeasors the right to contribution without changing the underlying law of joint and several liability. See id. (explaining that "one of the purposes of the Uniform Act was to provide for a proportionate allocation of the burden among tortfeasors who are liable."). Cases decided while New Mexico followed joint and several liability explicitly state that the Uniform Contribution Among Tortfeasors Act "require[s] the obligation to contribute toward a payment of a judgment [to] be predicated on joint or several liability." Sanchez v. City of Espanola, 94 N.M. 676, 678, 615 P.2d 993, 995 (Ct. App. 1980).

-9-

While the Uniform Contribution Among Tortfeasors Act recognized that the right of contribution existed among joint tortfeasors under the doctrine of joint and several liability, see N.M.S.A. § 41-3-2(A) (1978), it did not allow a settling tortfeasor to collect contribution from a non-settling tortfeasor whose liability was not decided in the settlement agreement, see N.M.S.A. § 41-3-2(C) (1978) ("A joint tortfeasor who enters into a settlement with the injured person is not entitled to recover contribution from another joint tortfeasor whose liability to the injured person is not extinguished by the settlement.").  Contribution is  not allowed under these circumstances because "a voluntary payment which one is not under legal obligation to make does not give a right of action against a co-obligor for contribution. . . ." Farmington Nat'l Bank v. Basin Plastics, Inc., 94 N.M. 668, 672, 615 P.2d 985, 989 (1980).

In 1982, New Mexico did away with joint and several liability and adopted contributory negligence and several liability. See Bartlett v. New Mexico Welding Supply, Inc., 98 N.M. 152, 646 P.2d 579 (Ct. App. 1982). "In New Mexico, the common law doctrines of contributory negligence and joint and several liability have been replaced with a system of pure comparative negligence and, with respect to concurrent tortfeasors, several liability." Lewis ex rel. Lewis v. Samson, 131 N.M. 317, 329, 35 P.3d 972, 984 (2001)(citing N.M.S.A. 1978, § 41-3A-1(A) (1987)) and Bartlett v. N.M. Welding Supply, Inc., 98 N.M. 152, 158, 646 P.2d 579, 585 (Ct.App.1982)). The Bartlett decision undermined the joint and several liability foundation of the Uniform Act by "effectively eliminat[ing] any basis for contribution among concurrent tortfeasors." Wilson v. Galt, 100 N.M.227, 231, 668 P.2d 1104, 1108 (Ct. App. 1983).  As a result, "contribution no longer applies to concurrent tortfeasors on the basis of each tortfeasor's negligence." Id., at 232, 688 P.2d at 1109 (emphasis added).  In addition, "a joint tortfeasor who is severally liable is not entitled to contribution, and the

judgment against him or her will not be reduced by any amount the plaintiff has recovered from any other joint tortfeasor." Servants of Paraclete, Inc. v. Great American Ins. Co., 866 F.Supp. 1560, 1574-75 (D.N.M. 1994)(citing N.M. Stat. Ann. § 41-3A- 1)(emphasis added). The adoption of several liability reinforces the proposition that voluntary settlement agreements do not give rise to contribution obligations.

      **2.**      **N.M.S.A. § 41-3A-1E.**

Following New Mexico's adoption of pure comparative negligence, the Legislature codified what the courts had accomplished through judicial decision by adopting the Several Liability Act, N.M.S.A. §§ 41-3A-1 through 2. The Several Liability Act establishes that "any defendant who establishes that the fault of another is a proximate cause of a plaintiff's injury shall be liable only for that portion of the total dollar amount awarded as damages to the plaintiff that is equal to the ratio of such defendant's fault. . . ." N.M.S.A. § 41-3A-1(B). Echoing the Court of Appeals' statement in Wilson v. Galt that "Bartlett effectively eliminates any basis for contribution among concurrent tortfeasors," § 41-3A-1E provides: "No defendant who is severally liable shall be entitled to contribution from any other person . . . ." The statute makes it clear that contribution is no longer available to any severally liable defendant.

**NEW MEXICO LAW ON INDEMNIFICATION AND IN PARI DELICTO**

Indemnity remains available under New Mexico law. See N.M.S.A. § 41-3A-1F ("Nothing in this section shall be construed to affect or impair any right of indemnity. . . ."). When the actions of two or more tortfeasors result in an injury and one tortfeasor pays for that injury, indemnity is allowed only if the paying tortfeasor was passively negligent. "The purpose of traditional indemnification is to allow a party who has been held liable without active fault to seek recovery from

one who was actively at fault. Thus the right to indemnification involves whether the conduct of the party seeking indemnification was passive and not active or in pari delicto with the indemnitor." Amrep Southwest, Inc., v. Schollenbarger Wood Treating, Inc., 119 N.M. 542, 546, 893 P.2d 438, 442 (1995). New Mexico first adopted the active/passive and in pari delicto tests in the 1940s, see id., 119 N.M. at 546, 893 P.2d at 442 (citing Krametbauer v. McDonald, 44 N.M. 473, 104 P.2d 900 (1940)), and continues to follow these doctrines today, see id. ("Other cases from New Mexico and from the Tenth Circuit Court of Appeals interpreting New Mexico law have held that New Mexico continues to follow the Krametbauer active/passive and in pari delicto doctrines.")(citing Morris v. Uhl & Lopez Engineers, Inc., 442 F.2d 1247, 1254 (10th Cir. 1971)). New Mexico courts have defined "active" and "passive" conduct:

> Active conduct is found if an indemnitee has personally participated in an affirmative act of negligence, was connected with negligent acts or omissions by knowledge or acquiescence, or has failed to perform a precise duty which the indemnitee had a duty to perform. Passive conduct occurs when the party seeking indemnification fails to discover and remedy a dangerous situation created by the negligence or wrongdoing of another.

Id. at 547, 846 P.2d at 443. Where a party fails to discover and remedy a dangerous situation, the conduct is passive; where a party does nothing after discovering the dangerous condition, the conduct is active. See id. Indemnification is appropriate only where the party seeking indemnification was passively negligent; if the party was actively negligent, indemnification is barred. See id. at 546, 846 P.2d at 442.

Where a party sues on a cause of action that does not allow proportional assignment of fault, New Mexico follows the doctrine of proportional indemnification as adopted in Amrep Southwest, Inc. v. Schollenbarger Wood Treating, Inc.. See id. at 552, 846 P.2d at 448. Proportional

indemnification is necessary only in situations where fault is not apportioned among parties.  For example,  actions for negligence are governed by comparative fault, which apportions fault among tortfeasors, so traditional indemnity principles apply because each tortfeasor is liable only for his share of the fault and will never pay more damages than his share.  See id.  Because that tortfeasor is only liable for his share of the damages, he is not entitled to indemnify from other tortfeasors.  See id. (explaining that "proportional indemnification need not apply when a factfinder makes a determination that a concurrent tortfeasor is proportionally liable to an injured party" because "each concurrent tortfeasor is liable only for the percentage of damages that is attributable to his or her fault.").  Proportional indemnity applies when "the one seeking indemnification has been adjudged liable for full damages on a third-party claim that is not susceptible under law to proration of fault among joint tortfeasors."  See id.  Proportional indemnity is available only when one tortfeasor is  obligated to pay more than his share of the damages.  See id. (explaining that, when homeowners sued home builder under Unfair Practices Act for breach of contract, and the Unfair Practices Act does not allow proration of fault, proportional indemnity would allow builder to recover from negligent suppliers).

## LAW REGARDING ASSIGNMENT OF CLAIMS

### 1.    Choice of Law Governing Transfer of Cases from One Jurisdiction to Another.

The question of whose law governs the assignment of claims depends in part upon the mechanism by which the case was transferred.  When venue is proper in the original forum, an action can be transferred to another venue, and the law of the transferor state applies to the action, regardless of who initiates the transfer.  See Ferens v. John Deere Co., 494 U.S. 516, 530-31 (1990).  Such transfers are effected under 28 U.S.C. § 1404(a), which  "was drafted in accordance with the doctrine of forum non conveniens, permitting transfer to a more convenient forum, even though the

venue was proper." 28 U.S.C. § 1404 Historical and Statutory Notes. Where venue is improper, on the other hand, § 1406(a) allows for dismissal or transfer to cure jurisdictional defects such as improper venue or lack of personal jurisdiction. See Ross v. Colorado Outward Bound School, Inc., 822 F.2d 1524, 1527 (10th Cir. 1987). While actions transferred under § 1404(a), for the convenience of the parties, apply the law of the transferor forum, actions transferred pursuant to § 1406(a), for improper venue or lack of jurisdiction, apply the law of the transferee forum. See id.

Section 1406(a) has been broadly construed to allow transfer of cases for lack of personal jurisdiction even though the plain language of the statute does not provide for this result. See Viernow v. Euripides Development Corp., 157 F.3d 785, 793 (10th Cir. 1998). Congress remedied this problem by enacting 28 U.S.C. § 1631, which "controls the action of a federal court when it finds that it lacks jurisdiction but that another federal court has jurisdiction." Ross v. Colorado Outward Bound School, Inc., 822 F.2d at 1526. Under Ross, "the transfer of a case for lack of personal jurisdiction from one district to another must be deemed to have been made pursuant to § 1631." Wandrey v. Service Business Forms, Inc., 762 F.Supp. 299, 303 (D. Kan. 1991). "Moreover, § 1631 makes it clear that whenever an action is transferred for want of personal jurisdiction, the law of the transferee state controls. This follows from the language of § 1631, which indicates that after transfer for lack of jurisdiction, 'the action or appeal shall proceed as if it had been filed in or noticed for the court to which it is transferred.'" Viernow v. Euripides Development Corp., 157 F.3d at 793 (citations omitted). Thus, in cases where the transferor court determines that it lacks personal jurisdiction, "the transferee jurisdiction's substantive and choice of law rules apply so long as the transfer did in fact cure a jurisdictional defect." Id.

2.      **Law Regarding the Validity of the Assignment of Claims.**

"New Mexico law recognizes the validity of choice of law provisions contained in contracts."

Burge v. Mid-Continent Casualty Co., 123 N.M. 1, 5, 933 P.2d 210, 214 (1996) (recognizing as valid

a contract selecting Oklahoma law)(citing Stevenson v. Louis Dreyfus Corp., 112 N.M. 97, 98, 811

P.2d 1308, 1309 (1991); Jim v. CIT Fin. Servs. Corp., 87 N.M. 362, 364, 533 P.2d 751, 753 (1975)).

Contracts created in other jurisdictions will generally be honored in New Mexico unless the contract

is contrary to public policy:

> It is clearly to the interest of the public that persons should not be unnecessarily
> restricted in their freedom to make their own contracts, and agreements therefore are
> not to be held void as being contrary to public policy, unless they are clearly contrary
> to what the legislature or judicial decision has declared to be the public policy, or they
> manifestly tend to injure the public in some way.

Berlangieri v. Running Elk Corp., 132 N.M. 332, 335-36, 48 P.3d 70, 73-74 (Ct. App. 2002), *aff'd*

*on other grounds*, 134 N.M. 341, 76 P.3d 1098 (2003).  See United Wholesale Liquor Co. v.

Brown-Forman Distillers Corp., 108 N.M. 467, 471, 775 P.2d 233, 237 (1987)("New Mexico also

has a strong public policy of freedom to contract that requires enforcement of contracts unless they

clearly contravene some law or rule of public morals.").  New Mexico recognizes that "courts should

invoke this public policy exception only in 'extremely limited' circumstances."  Reagan v. McGee

Drilling Corp., 123 N.M. 68, 71, 933 P.2d 867, 870 (Ct. App. 1997).  New Mexico's public policy

of freedom to contract has frequently been found stronger than the policies alleged to be violated by

contract provisions.  See, e.g. United Wholesale Liquor Co. v. Brown-Forman Distillers Corp., 108

N.M. 467, 471, 775 P.2d 233, 237 (1987)("The public policy behind the Franchise Act, to balance

the bargaining power between wholesaler and supplier, should not be allowed to override our strong

public policy of freedom to contract. The voluntary relinquishment of a statutory protection is

consistent with our policy favoring the right to contract."); <u>Reagan v. McGee Drilling Corp.</u>, 123 N.M. 68, 71, 933 P.2d 867, 870 (Ct.App. 1997)("In the present case, the indemnity provisions are valid under Texas law. . . . the indemnity provisions do not touch upon any rule of public morals. They do not rise to the level of violating 'some fundamental principle of justice, some prevalent conception of good morals. . . .'").

Missouri allows assignment of claims arising from contract claims or property tort claims because those claims are not personal in nature:

> "Frauds, deceits, and other torts by which an estate, real or personal, has been injured, diminished, or damaged have been traditionally classified as injuries to property rights which are assignable under common law and not as torts for personal injuries, and wrong done to the person, the reputation, or the feelings of the injured party, and those based on contracts of a purely personal nature, such as promises of marriage, which are not assignable under the common law."

<u>Gremminger v. Missouri Labor and Industrial Relations Commission</u>, 129 S.W.3d 399, 403 (Mo. Ct. App. 2004)(quoting <u>Park Nat'l Bank v. Globe Indemnity Co.</u>, 61 S.W.2d 733, 736 (Mo. 1933))(quotations and internal citations omitted.)  The Missouri Court of Appeals clearly stated in <u>Gremminger</u>: "An action for fraud and deceit is not a personal injury and is assignable when the injury affects the estate or arises out of contract.  Claimants' judgment for damages for fraudulent misrepresentation was for injury to property rights and interests and was not for invasion of a personal right."  <u>Id.</u> (quotations and internal citations omitted.)  Claims based on conversion are assignable under Missouri law as a property tort.  <u>See</u> <u>Lamar Advertising of Missouri, Inc. v. McDonald</u>, 19 S.W.3d 743, 744 (Mo. Ct. App. 2000)("Conversion is an assignable cause of action.").  Actions based on fraud or deceit are assignable in Missouri.  <u>See</u> <u>Gremminger v. Missouri Labor and Industrial Relations Commission</u>, 129 S.W.3d 399, 403 (Mo. Ct. App. 2004).  "An action for money

had and received for money damages . . . may be brought simply on the plaintiff's right to . . . ownership in the trust property."  35 Missouri Practice Series: Contracts, Equity, And Statutory Actions Handbook  §42.10 (2005).  Money had and received is therefore also based in property tort and is assignable under Gremminger.

## LAW REGARDING RULE 19(a)

The United States Court of Appeals for the Tenth Circuit observed in Davis v. United States, 192 F.3d 951 (10th Cir. 1999):

> When applying Rule 19, a district court must first determine whether the absent party is necessary to the lawsuit and, if so, whether joinder of the absent party is feasible. See Fed. R. Civ. P. 19(a).  An absent party is necessary to a suit if, (1) in the person's absence complete relief cannot be accorded among those already parties, or (2) the person claims an interest relating to the subject of the action and is so situated that the disposition of the action in the person's absence may (i) as a practical matter impair or impede the person's ability to protect that interest or (ii) leave any of the persons already parties subject to a substantial risk of incurring double, multiple, or otherwise inconsistent obligations by reason of claimed interest.

Id. at 957.  The Tenth Circuit went on to note that "Rule 19, by its plain language, does not require the absent party to actually possess an interest; it only requires the movant to show that the absent party 'claims an interest relating to the subject matter of the action.'"  Id. at 958 (quoting Fed. R. Civ. P. 19(a)(2)).

## ANALYSIS

SICH contends that Clovis Insurance violated its fiduciary duties to PFS by failing to notify PFS that the broker with which Clovis Insurance was working could not obtain the insurance policy for which PFS provided the premium payment.  In addition, SICH asserts that, despite Clovis Insurance's knowledge that Tessyman had no authority to accept premiums or issue insurance policies on SICH's behalf, Clovis Insurance should be held responsible for failing to cancel the premium

-17-

payment because Clovis Insurance had sufficient time to do so before Tessyman cashed the check and absconded with PFS' funds.  SICH argues that Tessyman wrongfully converted the entire premium payment as a direct result of Clovis Insurance's negligence and breach of fiduciary duties.

I.     **THE THIBODEAU LETTER, SETTLEMENT AGREEMENT, AND MOTION ARE PROPERLY BEFORE THE COURT PURSUANT TO RULE 10(C).**

The Court can properly consider all pleadings and attached exhibits under Rule 12(c).  The pleadings include the Complaint, Answer, Amended Answer, Third-Party Complaint, Amended Third-Party Complaint, and Second Amended Third-Party Complaint.  None of these documents have any attachments.  The Court will therefore consider these pleadings in its judgment on the pleadings.

The court can also consider the motion itself and exhibits attached to the motion if those exhibits were referenced in the complaint and are central to the plaintiff's claims.  See GFF Corp. v. Associated Wholesale Grocers., Inc., 130 F.3d at 1384-85.  Clovis Insurance's motion for judgment on the pleadings included three exhibits.  The exhibits attached to Clovis Insurance's motion are Exhibits A (Complaint), B (Settlement Agreement), and C (Thibodeau Letter).  SICH did not include any of these documents as attachments to any version of its Third-Party Complaint, nor has SICH challenged the authenticity of the copies attached to Clovis Insurance's motion.

Exhibit A is the original pleading between PFS and SICH, and is properly before the Court as a pleading under 10(c).  SICH referred to the Settlement Agreement, Exhibit B, in the Amended Third-Party Complaint at ¶¶ 14-15 and in the Second Amended Third-Party Complaint at ¶¶ 14-15, 51.  Even though the Settlement Agreement was not attached to either Amended Third-Party Complaint, it is central to SICH's action against Clovis Insurance because the Settlement Agreement assigns to SICH all of PFS' claims against Clovis Insurance.  Clovis Insurance attached a copy to its

motion for judgment on the pleadings, and there is no objection to its authenticity.  The Settlement Agreement is therefore properly before the Court.  SICH referred to the Thibodeau Letter, Exhibit C, in the Third-Party Complaint at ¶¶ 14, 19, Amended Third-Party Complaint at ¶¶ 20, 25, and Second Amended Third-Party Complaint at ¶¶ 24-25, but did not attach a copy to any of these pleadings.  The Thibodeau Letter is central to this action, because SICH relies on the letter to show that Clovis Insurance knew it should have canceled payment on the check mailed to Tesher before the check was actually cashed.  Clovis Insurance attached a copy of the Thibodeau Letter to its motion, and SICH did not object or raise any issue about the authenticity of the Letter.  The Letter is therefore properly before the Court.

## II.    CLOVIS INSURANCE'S MOTION FOR JUDGMENT ON THE PLEADINGS UNDER RULE 12(C) IS GRANTED IN PART AND DENIED IN PART.

Clovis Insurance submits that, based on SICH's Second Amended Third-Party Complaint and the pleadings and documents referred to therein, it is entitled to judgment on the pleadings.  See Memorandum in Support at 1.  Clovis Insurance had not yet filed an answer when it made its rule 12(c) motion, but the Court will consider the motion because SICH has not objected.  See Resolution Trust Corp. v. Wood, 870 F.Supp. 797, 804 (W.D.Tenn. 1994)("Even though the pleadings were not closed at the filing of the motions [because defendant had not yet filed an answer], the court will consider the pleadings as plaintiff presents no objection to the premature filing.").

Based on the allegations in PFS' Complaint for Damages and SICH's Second Amended Third-Party Complaint, in which SICH seeks contribution and indemnification from Clovis Insurance, SICH alleges that it and Clovis Insurance are concurrent tortfeasors.  Clovis Insurance contends that, to the extent that SICH seeks contribution and/or indemnification from Clovis Insurance, New

Mexico statutes and case law do not allow such relief.  See Amended Third-Party Complaint, Count III, at 9-10.

Clovis Insurance seeks judgment on the pleadings on the following grounds: (i) Clovis Insurance alleges that New Mexico's adoption of comparative negligence bars SICH's claims for contribution, see Memorandum in Support, ¶¶ 1-2; (ii) Clovis Insurance alleges that the doctrine of in pari delicto precludes plaintiff's claims for indemnification, see id. at ¶ 3; and (iii) Clovis Insurance alleges that SICH is barred from bringing this action as the assignee of PFS because New Mexico common law does not recognize assignment of this claim, see id. at ¶ 4.

### A.   N.M.S.A. § 41-3-2(C) (1987) BARS SICH'S CLAIM FOR CONTRIBUTION FROM CLOVIS INSURANCE.

N.M.S.A. § 41-3-2C (1987) bars contribution.  Section 41-3-2(C) precludes contribution to a settling tortfeasor by a concurrent tortfeasor whose liability was not extinguished in the agreement. Clovis Insurance was not a party to the Settlement Agreement between PFS and SICH, and thus the agreement cannot extinguish Clovis Insurance's liability.  SICH entered into a voluntary Settlement Agreement, and such agreements do not give rise to a claim for contribution.  See Farmington Nat'l Bank v. Basin Plastics, Inc., 94 N.M. at 672, 615 P.2d at 989.  Moreover, SICH's claim for contribution is further precluded by operation of N.M.S.A. § 41-3A-1E.  New Mexico no longer recognizes contribution among concurrent tortfeasors; any recovery must be had by indemnification. Statute and case law do not allow SICH's claim herein to seek contribution.  SICH does not dispute that contribution is barred as a matter of law because SICH's settlement did not extinguish Clovis Insurance's liability.  See Transcript of Hearing at 29:22-30:7 (taken October 12, 2005). The Court

therefore finds the claim for contribution is barred by operation of law and will dismiss the contribution claim.

### B.   THE COURT WILL DENY CLOVIS INSURANCE'S MOTION ON SICH'S CLAIM FOR INDEMNIFICATION.

Because there is no right to contribution under comparative negligence, any recovery by SICH from Clovis Insurance must be had under indemnification.  Clovis Insurance argues that, even assuming--for purposes of this motion only--negligence on its part, based on the Second Amended Third-Party Complaint's allegations, the parties' actions were in pari delicto, thereby precluding SICH's claim for indemnification.

A motion for judgment on the pleadings pursuant to rule 12(c) must be converted to a motion for summary judgment if information outside the pleadings is presented to the court.  See Fed. R. Civ. P. 12(c). The court can also consider exhibits attached to the motion under certain circumstances. See GFF Corp. v. Associated Wholesale Grocers, Inc., 130 F.3d at 1384.  At oral argument, however, the Court was presented with facts that were outside the scope of the pleadings, and the Court believes the motion to dismiss the indemnification claim is thus better decided on summary judgment grounds.  See Transcript of Hearing at 42:4-13.  For example, none of the pleadings address when SICH received Bell Gas' application for insurance, but Clovis Insurance suggested at the hearing that SICH had that application in hand on March 15, 2002, before SICH canceled the Tesher Program on March 18.  See id. at 14:2-6.  Additionally, none of the pleadings mention when Clovis Insurance became aware of the Thibodeau Letter, but Clovis Insurance mentioned at the hearing that the letter was probably delivered to Bell Gas on April 20th, a Saturday, and that Clovis Insurance did not know about the letter until April 23rd.  See id. at 6:22-24, 7:4-8.  Because these

may be material facts, and these facts may be dispositive, the Court is concerned that Clovis Insurance's request for dismissal of the indemnification claim is based on facts beyond the four corners of the pleadings. The Court declines to convert the motion to dismiss to a matter of summary judgment on oral representations of the facts at the hearing.

At the hearing, the parties agreed that this issue is therefore better decided at a later time on a motion for summary judgment. See id. at 20:20-22 (Clovis Insurance would "much prefer the court to consider this on summary judgment"); 32:11-14 (SICH "is happy" to "defer that issue for summary judgment in the future."). The Court denies this portion of the motion for judgment on the pleadings.

C.     **PFS' ASSIGNMENT OF CLAIMS TO SICH IS VALID UNDER MISSOURI LAW AND NEW MEXICO COURTS WOULD RECOGNIZE THIS CHOICE OF LAW PROVISION AS VALID.**

Clovis Insurance argues that, to the extent SICH is proceeding in this action as an assignee of claims assigned to it by PFS under the PFS/SICH Settlement Agreement, the assignment is unenforceable under New Mexico law. Clovis Insurance contends that New Mexico's common law prohibits the assignment of personal injury claims and thus SICH's claim as PFS' assignee cannot be allowed.

Judge Sach's order transferring this case from Missouri to New Mexico purported to do so under 28 U.S.C. § 1404(a). See Order Granting Plaintiff's Motion to Change Venue at 1. Even though Judge Sachs cited § 1404(a) in his order, § 1404(a) cannot apply because defendant Clovis Insurance was not subject to personal jurisdiction in the Western District of Missouri. See Order Provisionally Granting Defendant Clovis Insurance's Motion To Dismiss For Lack of *In Personam* Jurisdiction at 14 ("Clovis does not have sufficient contacts with Missouri to permit the exercise of personal jurisdiction over it consistent with due process."). Because the case was not properly before

-22-

the Missouri Court, the case must have been transferred under a mechanism other than § 1404.  As set forth more fully above, the case is deemed to have been transferred pursuant to § 1631 because it was transferred for lack of personal jurisdiction over the defendant.  See Ross v. Colorado Outward Bound School, Inc., 822 F.2d at 1526; Wandrey v. Service Business Forms, Inc., 762 F.Supp. at 303.  Under § 1631, the substantive law and choice of law rules of the transferee state, New Mexico, control. See Viernow v. Euripides Development Corp., 157 F.3d at 793.

New Mexico recognizes choice of law provisions in contracts.  See Burge v. Mid-Continent Casualty Co., 123 N.M. 1, 5, 933 P.2d 210, 214 (1996).  PFS and SICH selected Missouri law to govern the contract whereby PFS assigned its claims to SICH.  The assignment will be valid if valid under Missouri law, unless the assignment is clearly against New Mexico's public policy.

PFS' original action was for conversion, negligent misrepresentation, and money damages. See Complaint, Counts I, II, and III.  Conversion is "wrongful possession or disposition of another's property as if it were one's own."  Black's Law Dictionary 332 (7th ed. 1999).  Claims based on conversion are assignable under Missouri law as a property tort.  See Lamar Advertising of Missouri, Inc. v. McDonald, 19 S.W.3d at 74 ("Conversion is an assignable cause of action").  A misrepresentation is the "act of making a false or misleading statement about something, usually with the intent to deceive."  Black's Law Dictionary 1016 (7th ed. 1999).  Actions based on fraud or deceit are assignable in Missouri.  See Gremminger v. Missouri Labor and Industrial Relations Commission, 129 S.W.3d at 403.  The Missouri action for "money had and received" is also based in property:  "An action for money had and received for money damages . . . may be brought simply on the plaintiff's right to . . . ownership in the trust property." 35 Missouri Practice Series: Contracts, Equity, And Statutory Actions Handbook §42.10 (2005).  Money had and received is therefore also

based in property tort. All three actions fall within the category of claims that Missouri courts have held assignable. PFS' assignment of claims to SICH is therefore valid unless recognizing such assignment is "clearly contrary to what the [New Mexico] legislature or judicial decision has declared to be the public policy, or they manifestly tend to injure the public in some way." Berlangieri v. Running Elk Corp., 132 N.M. at 335-36, 48 P.3d at 73-74.

New Mexico prohibits assignment of personal injury claims because "assignment of personal injury claims would lead to unscrupulous trafficking in litigation as a commodity." Quality Chiropractic, P.C. v. Farmers Ins. Co. of Arizona, 132 N.M. 518, 522, 51 P.3d 1172, 1176 (Ct. App. 2002). Similarly, Missouri prohibits the assignment of personal injury claims "to prevent unscrupulous people from purchasing causes of action and trafficking in lawsuits for pain and suffering." Marvin's Midtown Chiropractic Clinic, L.L.C. v. State Farm Mut. Auto. Ins. Co., 142 S.W.3d 751, 754 (Mo. Ct. App. 2004). New Mexico does, however, recognize that a partnership or joint venture that has a right to sue can assign that right to sue. See GCM, Inc. v. Kentucky Cent. Life Ins. Co., 124 N.M. 186, 195 947 P.2d 143, 152 (1997)("In order to assign the right to sue belonging to a partnership, all partners must agree to the assignment. We assume that the same principle applies to an assignment by a joint venture.")(internal citations omitted). Because both states prohibit the assignment of personal injury claims while allowing the assignment of other types of claims, the Court finds that this is not one of the "extremely limited" circumstances justifying refusal to enforce foreign law contracts, and that New Mexico's strong public policy of freedom to contract requires enforcement of the Missouri law and of the assignment, because it is not clearly contrary to public policy, nor does it manifestly tend to injure the public in some way. See Berlangieri v. Running Elk Corp., 132 N.M. at 336, 48 P.3d at 74.

## III.    BELL GAS IS NOT A NECESSARY PARTY AND WILL NOT BE JOINED.

Clovis Insurance also asks that, if the Court denies its Motion for Judgment on the Pleadings, the Court should enter an order finding Bell Gas as a party which must be joined in this lawsuit. Clovis Insurance contends that, because PFS financed only part of the premiums, Bell Gas may have claims that will be litigated, or may have already been litigated, to its prejudice, requiring its joinder herein.  Clovis Insurance contends that, to the extent Bell Gas has claims arising out of the actions or inactions of SICH or SICH's agent and/or against Clovis Insurance, those claims must necessarily be litigated in this lawsuit.  Clovis Insurance further contends that, absent Bell Gas' joinder herein, complete relief cannot be accorded those already parties to this lawsuit.  Finally, Clovis Insurance asserts that, if Bell Gas is not joined in this action, Bell Gas' ability to protect or pursue its interests or claims may be impaired or jeopardized, and SICH and Clovis Insurance may be exposed to substantial risk of incurring inconsistent or multiple obligations by reason of Bell Gas' claims.

According to Davis v. United States, the district court must first determine whether Bell Gas is a party necessary to the lawsuit and, if so, whether joinder is feasible. See 192 F.3d 951, 957.  A party is necessary if in their absence complete relief cannot be accorded among the current parties, if the absent party's interests might be impaired if not joined, or if the absence would expose any existing party to a substantial risk of multiple or inconsistent obligations. See id.

The outcome of this case depends on whether SICH or Clovis Insurance could have done anything to prevent Tessyman from fraudulently converting the $340,248.00 premium check issued by Clovis Insurance on PFS' behalf.  While Bell Gas may have paid Tessyman over $100,000 in unfinanced premiums, those monies do not appear to be at issue in the dispute between SICH and Clovis Insurance presently before the Court.  SICH and Clovis Insurance can be afforded complete

-25-

relief on the question of the financed premium without joining Bell Gas in the lawsuit.

Bell Gas' interests are unlikely to be impaired by its absence. The current case concerns only the financed premiums, not any unfinanced money that Bell Gas paid. Bell Gas has known about this lawsuit since SICH filed its Third-Party Complaint against Clovis Insurance and Bell Gas in November, 2004. Bell Gas has not joined, intervened, or otherwise expressed interest in the litigation, and is unlikely to do so now. Furthermore, the financing agreement between Bell Gas and PFS assigned all of Bell Gas' claims to PFS; Bell Gas may already have been made whole outside the context of this lawsuit.

It is unlikely that Bell Gas' absence will expose SICH or Clovis Insurance to multiple or inconsistent obligations. Any obligations arising out of this lawsuit will involve only the financed premiums. This lawsuit cannot address either party's obligations regarding unfinanced premiums because those monies are not at issue here. Regardless of what happens in the current action, SICH and Clovis Insurance may still be liable for damages related to the unpaid premiums. Because Bell Gas is not a necessary party, the Court need not address whether it is feasible to join Bell Gas in the current action.

**IT IS ORDERED** that Third-Party Defendant Clovis Insurance Center, Inc.'s Motion Pursuant to Fed. R. Civ. P. 10(c), 12(c) and 19(a) is granted in part and denied in part. The Court will dismiss the contribution claim with prejudice. The Court will defer ruling on the indemnification claim until a later time. The Court finds that the assignment of claims is valid under Missouri law and not void in New Mexico as a matter of public policy. Finally the Court will not join Bell Gas as a necessary party.

_____
UNITED STATES DISTRICT JUDGE

_Counsel:_

Paul Koller
Christopher M. Wolpert
Rodey, Dickason, Sloan, Akin & Robb, P.A.
Albuquerque, New Mexico

     _Attorneys for the Third-Party Plaintiff_

Briggs F. Cheney
Law Office * Briggs F. Cheney
Albuquerque, New Mexico

     _Attorney for Third-Party Defendant_