IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

SECURITY INSURANCE COMPANY
OF HARTFORD,

       Third-Party Plaintiff,

vs.                                                                                                      No. CIV 04-1246 JB/ACT

CLOVIS INSURANCE CENTER, INC.,
d/b/a DESERT STATES INSURANCE,

       Third-Party Defendant.

**MEMORANDUM OPINION AND ORDER**

**THIS MATTER** comes before the Court on Security Insurance Company of Hartford's Motion for Leave to Withdraw and Amend its Response to Request for Admission No. 98 of Defendant's First Requests for Admission, filed May 3, 2006 (Doc. 154). The Court held a hearing on this motion on June 21, 2006. The primary issue is whether the Court should allow Security Insurance Company of Hartford ("SICH") to withdraw its Response to Request for Admission No. 98. Because the Court concludes that withdrawal and amendment will promote and subserve the presentation of the merits, and because the Court can mitigate or cure any unfair prejudice by allowing further discovery, the Court will grant the motion.

**PROCEDURAL BACKGROUND**

Premium Financing Specialists, Inc. ("PFS") filed the original action on July 9, 2002, in the United States District Court for the Western District of Missouri against SICH, seeking to recover monies that PFS paid to SICH to finance premiums for insurance purchased by Clovis Insurance Center, Inc.'s client, Bell Gas, Inc. See Complaint, filed July 9, 2002 (Doc. 1). While the case was

pending in Missouri, SICH filed its third-party complaint against Clovis and Bell Gas. See Third Party Complaint, filed August 4, 2003 (Doc. 20). SICH filed an amended third-party complaint on December 16, 2003, while the matter was still pending in Missouri. See Amended Third-Party Complaint (Doc. 34).

Clovis filed a motion to dismiss based on lack of personal jurisdiction on August 29, 2003. See Third Party Defendant Clovis Insurance Center, Inc.'s Motion to Dismiss for Lack of *In Personam* Jurisdiction and Suggestions in Support (Doc. 21). On September 10, 2003, SICH filed its Response to Clovis' motion to dismiss, and in its response, SICH alleged that Fleet Bank paid the $340,248.00 PFS draft at issue on April 25, 2002. See Security Insurance Company of Hartford's Suggestions in Opposition to Clovis Insurance Center Inc.'s Motion to Dismiss for Lack of *In Personam* Jurisdiction at 4 (Doc. 26). On March 14, 2005, after this case was transferred to the United States District Court for the District of New Mexico, SICH filed its Second Amended Third-Party Complaint; the pleading alleged that Tesher Corporation cashed the $340,248.00 PFS draft on April 25, 2002. See Second Amended Third-Party Complaint ¶ 27, at 5-6 (Doc. 64).

SICH admitted this same fact -- that Fleet Bank cashed the PFS draft on April 25, 2002 -- in its Request for Admission of Fact No. 98. See Security Insurance Company of Hartford's Responses to Defendant's First Requests for Admission, Request for Admission No. 98 at 19. Request for Admission No. 98 asked SICH to admit that the PFS draft cleared the PFS bank on April 25, 2002. SICH admitted Request for Admission No. 98.

SICH contends that it based its admission solely upon the stamp of Fleet Bank on the back of the draft, dated April 25, 2002. See Security Insurance Company of Hartford's Motion for Leave to Withdraw and Amend its Response to Request for Admission No. 98 of Defendant's First

Requests for Admission ("Motion to Withdraw") at 1; PFS Draft (dated April 20, 2002). The Fleet Bank stamp was one of many stamps. See PFS Draft at back. SICH served its responses to Defendant's First Requests for Admission on October 21, 2005, admitting the same fact it had alleged in its Response in Opposition to Motion to Dismiss for Lack of In Personam Jurisdiction and in its Second Amended Third Party Complaint. See Certificate of Service, filed October 21, 2005 (Doc. 109).

SICH contends that it based its initial admission upon a reasonable interpretation of the many, somewhat illegible, date stamps on the back of the draft. See Security Insurance Company of Hartford's Reply in Support of it's Motion for Leave to Withdraw and Amend it's Response to Request for Admission No. 98 of Defendant's First Requests for Admission ("Reply") at 3-4, filed June 1, 2006 (Doc. 159). At the time of the admission, SICH asserts that it reasonably believed that these stamps constituted the best evidence of the time that PFS had to stop payment on the draft. See id. SICH represents that Clovis' counsel was uncomfortable with reliance upon the stamps or the deposition testimony of prior witnesses, and sought a more definitive answer by noticing Brown's deposition. See id. at 3.

On January 25, 2006, Clovis' counsel took the deposition of Kevin Brown, PFS' comptroller. See Deposition of Kevin Brown (hereinafter "Brown Depo.")(taken January 25, 2006). Brown manages PFS' accounting department, which is responsible for stopping payment on PFS drafts such as the one at issue in this case. During Brown's deposition, he testified that the PFS draft at issue was presented to Fleet Bank for payment on April 25, 2002, but was not paid from PFS' account with Fleet Bank until April 26, 2002. See id. at 29-30. Later in his deposition, Brown testified that he does not know how the banks settle payments of drafts. See id. at 56-57. Brown testified, however,

that, even if Fleet Bank had paid out the money on the draft at issue on April 25, 2002, PFS could have notified Fleet Bank to stop payment of the draft as late as 1:30 p.m. central time on April 26, 2002, and the money paid out on the draft could have been returned to PFS' account with Fleet Bank. See id. at 77-78, 81-82.

When pressed on cross examination, Brown admitted the following as to the agreement or agreements between PFS and Fleet Bank.

> Q. And those would answer the questions that Mr. Koller has just put to you as to what the obligations were of Fleet Bank to PFS in terms of its liabilities or responsibilities in terms of a stop payment order?
>
> * * * *
>
> A. I would assume it would but I haven't seen the agreement in so long that I don't know.
>
> Q. (By Mr. Cheney) But that would be the best evidence, right?
>
> A. Yes.
>
> Q. And you are simply going by memory today, right?
>
> A. Yes.

Id. at 80:2-14.

> Q. And in terms of what obligations or duties might have been owed Fleet Bank to you, you're simply going from memory of a document that we can't find today?
>
> A. Correct.

Id. at 81:4-8.

SICH represents that it has made diligent efforts both to obtain the agreement at issue from PFS and/or Fleet Bank -- now Bank of America -- and to determine the exact timing of the

occurrence of the various aspects of the transaction at issue. See Reply at 5. In that regard, SICH represents that it has contacted, among others, numerous individuals at PFS, Bank of America, and Tesseyman's bank in Tyler, Texas, in an attempt to obtain documents and information that would assist the parties and the Court in coming to an accurate understanding of the factual aspects of this case. See id. SICH represents that it has served subpoenas upon both PFS and Bank of America that seek the production of the agreement. See id.

The Court has twice extended the deadline for discovery. See Order Extending Discovery Deadline, filed October 12, 2005 (Doc. 108); Order Extending Discovery and Pretrial Deadlines and Resetting Trial, filed January 19, 2006 (Doc. 125). Discovery ended on January 31, 2006. See Order Extending Discovery and Pretrial Deadlines and Resetting Trial at 2. In compliance with the Court's March 2, 2006 deadline for the filing of dispositive motions, see id., Clovis filed its Motion for Summary Judgment on March 1, 2006, see Third Party Defendant's Motion for Summary Judgment and Supporting Memorandum (Doc. 136). Clovis, thus, was on notice of Brown's testimony for over a month before it filed its motion for summary judgment.

Clovis sought summary judgment on four grounds: (i) Clovis owed no duty to act under the doctrine of apparent authority; (ii) SICH is not entitled to indemnification from Clovis because there was no pre-existing legal relationship; (iii) proportional indemnification should not be applied in this case;[1] and (iv) SICH is not entitled to traditional indemnification from Clovis because SICH was actively negligent. See generally Third Party Defendant's Motion for Summary Judgment and Supporting Memorandum. Clovis, in its motion for summary judgment, cites SICH's Response to

---

[1] At the hearing on the motion for summary judgment, SICH agreed with Clovis that traditional indemnification applied, and that proportional indemnification did not apply. See Transcript of Hearing at 34:21-35:6 (taken April 14, 2006).

-5-

Request for Admission No. 98 in support of one of its undisputed facts -- No. 55. See id. ¶ 55, at 15. After the close of discovery, on March 27, 2006, in its Response to Clovis' Motion for Summary Judgment, SICH, for the first time, denied that Fleet Bank had cashed the $340,248.00 PFS draft on April 25, 2002. See Security Insurance Center of Hartford's Response in Opposition to Third Party Defendant's Motion for Summary Judgment at 6 (Doc. 140).

The Court set oral argument on Clovis' Motion for Summary Judgment for April 14, 2006. Following oral argument on Clovis' Motion for Summary Judgment, SICH filed this motion, asking the Court to allow it to withdraw and to amend Admission No. 98. SICH specifically requests that the Court allow it to withdraw its previous "Response to Request for Admission No. 98," to allow SICH "to amend its response by denying Request for Admission No. 98, and otherwise respond to the request in a manner consistent with the testimony of Mr. Brown." Motion to Withdraw at 2.

With discovery closed, and after full briefing and oral argument on Clovis' Motion for Summary Judgment, SICH now asks leave from the court to withdraw and amend its admission of fact. See id. at 1. Clovis' counsel opposes this motion. See id. Clovis contends that the Court should deny SICH's request because: (i) the request is not timely; (ii) it will not promote the merits of the case; and (iii) it is prejudicial to the third-party defendant. See Defendant Clovis' Response to SICH's Motion for Leave to Withdraw and Amend its Response to Request for Admission of Fact No. 98 of Defendant's First Requests for Admission ("Response") at 2, filed May 15, 2006 (Doc. 157).

### STANDARD FOR DECIDING MOTIONS TO WITHDRAW ADMISSIONS

Rule 36(a) of the Federal Rules of Civil Procedure provides that "[a] party may serve upon any other party a written request for the admission" of the truth of certain matters. If a matter is

admitted, it "is conclusively established unless the court on motion permits withdrawal or amendment of the admission." Fed. R. Civ. P. 36(b). "The court may permit such withdrawal or amendment when [1] the presentation of the merits of the action will be subserved thereby and [2] the party who obtained the admission fails to satisfy the court that withdrawal or amendment will prejudice that party in maintaining the action or defense on the merits." Raiser v. Utah County, 409 F.3d 1243, 1246 (10th Cir. 2005)(citations and internal quotations omitted)

A district court has considerable discretion whether to permit withdrawal or amendment of an admission; that discretion, however, "must be exercised within the bounds of th[e] two-part test." American Auto Association v. AAA Legal Clinic, 930 F.2d 1117, 1119 (5th Cir. 1991). Rule 36(b)'s provision for withdrawal or amendment of an admission "emphasizes the importance of having the action resolved on the merits, while at the same time assuring each party that justified reliance on an admission in preparation for trial will not operate to his prejudice." Fed. R. Civ. Proc. 36(b) Advisory Committee Notes (citation omitted). In deciding whether to grant a rule 36(b) request to withdraw and amend a discovery response, "[t]he court's focus must be on the effect upon the litigation and prejudice to the resisting party rather than [] on the moving party's excuses for an erroneous admission." Kirtley v. Sovereign Life Ins. Co. of California, 212 F.3d 551, 556 (10th Cir. 2000)(citations and internal quotations omitted).

Inconvenience alone does not constitute prejudice. See Raiser v. Utah County, 409 F.3d at 1246. "The prejudice contemplated by Rule 36(b) is not simply that the party who obtained the admission now has to convince the jury of its truth. Something more is required." Id. (citations and internal quotations omitted). Specifically, "preparing a summary judgment motion in reliance upon an erroneous admission does not constitute prejudice." Id. (citation and internal quotations omitted).

The prejudice that rule 36(b) contemplates "relates to the difficulty a party may face in proving its case, e.g., caused by the unavailability of key witnesses, because of the sudden need to obtain evidence with respect to the questions previously deemed admitted." Id. (citation and internal quotations omitted).

The Tenth Circuit has held that a response to a motion for summary judgment can constitute a motion to withdraw previous admissions that are subsequently refuted in that response. See Bergemann v. United States, 820 F.2d 1117, 1120-1121 (10th Cir. 1987)(noting that the plaintiff's citation to rule 36(b) language stating that an admission may be amended or withdrawn "on motion" was "overly technical and does not recognize the reality of the situation").

## ANALYSIS

Although the request to withdraw Admission No. 98 is somewhat late in the process, the Court believes that it can, if necessary, cure any prejudice to Clovis that may result from the request being made after discovery closed. Additionally, the Court finds that the presentation of the merits will be subserved by allowing the withdrawal of Admission No. 98. Furthermore, Clovis will not be prejudiced in the presentation of its case, especially in light of the fact that the Court can cure the asserted prejudice that may occur as a result of discovery being closed.

**I.   WITHDRAWAL OF THE REQUEST FOR ADMISSION WILL PROMOTE OR SUBSERVE THE MERITS OF THIS CASE.**

SICH contends that the sworn testimony of PFS' comptroller -- the executive responsible for PFS' accounting practices and banking relationships, who has personal knowledge of the procedure for stopping payment on PFS' drafts with Fleet Bank -- constitutes better evidence than SICH's good faith reliance on a series of illegible stamps. See Reply at 3-4. SICH contends that the relief it seeks

would promote the factual accuracy of the record upon which the merits of the case will be decided by substituting the sworn testimony of an individual with personal knowledge of the circumstances for a prior admission that was, in effect, nothing more than a best guess. See id.

SICH argues that, based on Brown's testimony, the PFS draft was presented to Fleet Bank on April 25, 2002, but was not paid from PFS' account with Fleet Bank until April 26, 2002. See Security Insurance Company of Hartford's Motion for Leave to Withdraw and Amend its Response to Request for Admission No. 98 of Defendant's First Requests for Admission at 1-2. As SICH admits and acknowledges in its motion, Brown testified that he did not know if Fleet Bank paid the draft on April 25, 2002 and further testified that he was not familiar with how banks settle payments of drafts. See id. SICH argues that, notwithstanding this admitted lack of knowledge, Brown testified that, even if Fleet Bank had paid the PFS draft on April 25, 2002, Fleet Bank would have been required to return those funds to PFS' account had PFS notified Fleet Bank to stop payments by 1:30 p.m. central time on April 26, 2002. See id.

Clovis contends that, although subsequent discovery has revealed additional evidence, the additional information does not provide both the Court and the parties with a more accurate understanding of the time frame in which PFS could have stopped payment. See Defendant Clovis' Response to SICH's Motion for Leave to Withdraw and Amend its Response to Request for Admission of Fact No. 98 of Defendant's First Requests for Admission ("Response") at 4-7, filed May 15, 2006 (Doc. 157). Clovis contends that the additional evidence being offered would not be admissible, and therefore would not subserve the presentation of the merits of the action. See id. Clovis argues that Brown is not competent to testify because: (i) he admitted in his deposition that he was unsure when Fleet Bank paid the draft; (ii) he was not familiar with how banks settle payments

on drafts; and (iii) his testimony relies on his memory of a document that is not available. See id.

Clovis argues that the contractual agreement underlying the relationship between PFS and Fleet Bank is the best evidence of the terms of that agreement, and that SICH has not shown that it is excused from the best evidence rule. SICH contends that the best evidence rule is not applicable here, and that it has shown that the agreement is not available. The Court believes that the best evidence rule does have some application here, because if the evidence is not admissible in evidence, it will not be able to subserve the presentation of the merits. However, the Court believes that Brown will be able to testify as to the practice and procedures that he is familiar with, and with which he has first hand knowledge. And, SICH has shown, at this time, that it has attempted to procure the documents underlying the agreement, and that such documents are not available. Thus, the Court does not believe, at this stage in the proceedings, that all of the evidence will be precluded, and it may be that none of Brown's testimony will be inadmissible.

Second, although Brown does not know whether Fleet Bank paid the draft on April 25 and is unfamiliar with how banks settle payments of drafts, he is familiar with the practices and procedures between Fleet Bank and PFS as comptroller managing PFS' accounting department. He will not be able to testify when Fleet Bank paid the draft, but he will be able to testify to the practices and procedures concerning when Fleet Bank will stop payment on a PFS draft.

This issue is in dispute and tied up in the issues that the Court must determine in this case. Whether Clovis owed a duty to PFS as its agent, the extent of such duty, whether the information Clovis received from SICH put Clovis on notice, whether Clovis was required to pass this information on to PFS, and whether there was sufficient time to stop payment on the PFS draft after Clovis' alleged notice, are all issues in dispute that the Court may need to resolve at trial. Because the timing

of the stop payment is an issue that the Court may have to decide, evidence from Brown that appears to be admissible at trial and that sheds light on this issue will subserve and promote the merits of this case.

Clovis relies on <u>Banos v. City of Chicago</u>, 398 F.3d 889 (7th Cir. 2005), for the proposition that the merits of the case will not be subserved by allowing withdrawal. <u>See</u> Response at 6-7. The situation with which the United States Court of Appeals for the Seventh Circuit was presented is different than that presented in this case. In <u>Banos v. City of Chicago</u> -- Title VII litigation -- the plaintiffs elected to abandon one theory of recovery to pursue a different theory. <u>See</u> 398 F.3d at 890-91. When this different theory of recovery appeared to be a losing cause, the plaintiffs tried to resuscitate their original theory. <u>See</u> <u>id.</u> The court found that withdrawal of the admission would not subserve the merits of the case because the original theory of recovery was most likely barred by law. <u>See</u> <u>id.</u> at 892. The Court does not believe <u>Banos v. City of Chicago</u> forecloses SICH's argument here that the merits will be subserved by withdrawal of the admission. In <u>Banos v. City of Chicago</u>, the merits were not subserved because withdrawal of the admission would have been pointless in light of case law. Here, withdrawal of the admission will not be pointless because the evidence, which appears to be admissible, goes to an issue in dispute.

The Court finds that SICH's request will promote and subserve the presentation of this case, because the withdrawal of Admission No. 98 goes to a central issue in dispute in the case, and because at least some of the evidence appears to be admissible.

**II.     CLOVIS HAS NOT SHOWN SUFFICIENT PREJUDICE, AND THE COURT CAN CURE ANY PREJUDICE THAT DOES OCCUR.**

Clovis first argues that the Court should deny SICH's request because the request is not

timely made.  See Response at 2-4, 7-8.  The timeliness of SICH's request is tied to the issue whether withdrawal of Admission No. 98 will prejudice Clovis.  The Court finds that allowing withdrawal of Admission No. 98 will not be prejudicial to Clovis in light of the fact that the Court can cure any such prejudice.

Clovis asserts that the prejudice it will suffer goes more towards the trial on the merits rather than its motion for summary judgment.  See Transcript of Hearing at 14:24-15:1 (taken June 21, 2006).[2]  Clovis also contends that this request was made after discovery was closed, that it has been relying on the admission in conducting its discovery, and that it would need to depose employees of Fleet Bank if the Court grants SICH's request.  See id. at 12:7-20, 15:21-23.  Although the Court agrees that Clovis would be prejudiced if it was "stuck" with the testimony it had procured through the now-closed discovery process, the Court can cure any such prejudice by re-opening discovery for such limited purposes if necessary.

Clovis has not shown how it will otherwise be prejudiced by the timing of this request.  Clovis relies again, however, on Banos v. City of Chicago, for the proposition that, because of the delay involved here, prejudice is shown.  See Response at 7-8.  The Court disagrees.  In Banos v. City of Chicago, the Seventh Circuit found that prejudice would occur if the plaintiffs were allowed to withdraw an admission.  See 398 F.3d at 893.  The Seventh Circuit relied on the following to show prejudice: (i) the lawsuit had been ongoing for about four years when the request for withdrawal was made; (ii)  the plaintiffs forced the City to litigate the original theory, only to abandon such theory for a new one; (iii) discovery was completed on the plaintiffs' new theory and then they tried to

---

[2] The Court's citations to the transcript of the hearing refer to the Court Reporter's original, unedited version.  Any final transcript may contain slightly different page and/or line numbers.

resuscitate their original theory; and (iv) throughout the case the City had been subject to numerous delays and voluminous discovery. See id. The case here is different. SICH is not attempting to abandon a theory, nor will withdrawal of Admission No. 98 force Clovis to abandon or litigate a new theory. The withdrawal does not appear to have a bearing on the number of claims, or the nature of the claims brought. Although this case has been ongoing for about four years, SICH did not file its Third-Party Complaint until less then three years ago. Finally, Clovis has not shown that SICH has subjected Clovis to numerous delay, nor that SICH has subjected Clovis to voluminous discovery.

Clovis also appears to contend that because its defense will be harder to prove, that it will suffer prejudice. This rationale, however, is not the prejudice that the two-part test noted in Raiser v. Utah County contemplates. See Kerry Steel, Inc. v. Paragon Industries, Inc., 106 F.3d 147, 154 (6th Cir. 1997)("The prejudice contemplated by [Rule 36(b)] is not simply that the party who initially obtained the admission will now have to convince the fact finder of its truth. Prejudice under Rule 36(b), rather relates to special difficulties a party may face caused by a sudden need to obtain evidence."). There is no evidence that Clovis has lost its capability of presenting evidence. See Raiser v. Utah County, 409 F.3d at 1246 (finding that the prejudice that rule 36(b) contemplates "relates to the difficulty a party may face in proving its case, e.g., caused by the unavailability of key witnesses, because of the sudden need to obtain evidence with respect to the questions previously deemed admitted.").

Also, the Tenth Circuit has indicated that the fact that Clovis has filed and briefed its motion for summary judgment before SICH filed its motion is insufficient, alone, to constitute the prejudice to overcome a request for rule 36(b) relief. See Kirtley v. Sovereign Life Ins. Co. of California, 212 F.3d at 556 (citation omitted).

-13-

With regard to prejudice, the withdrawal and amendment of the admission will neither compromise nor significantly alter Clovis' ability to present a defense to the claims that SICH asserts. Both SICH and Clovis will have to litigate this issue whether the date is April 25, 2002 or April 26, 2002. It is difficult to imagine any substantive change in Clovis' case or an adverse affect upon its ability to present that case resulting from the withdrawal and amendment of the admission.

Additionally, under Tenth Circuit precedent, it appears that SICH did not need to file its motion for withdrawal, and that its Response in Opposition to Defendant's Motion for Summary Judgment may have been sufficient to constitute a request to withdraw and amend its response to Request for Admission No. 98. See Bergemann v. United States, 820 F.2d at 1120-21. SICH in its Response to Clovis' Motion for Summary Judgment contended that the evidence surrounding Admission No. 98 had changed and that it was contesting the conclusion contained in Admission No. 98. See Security Insurance Company of Hartford's Response in Opposition to Third Party Defendant's Motion for Summary Judgment at 6, filed March 27, 2006 (Doc. 140). SICH's Response, coupled with Brown's testimony over a month earlier, was sufficient to put Clovis on notice that SICH's prior admission was not consistent with its admission and to allow Clovis, through its Reply in Support of its Motion for Summary Judgment, if necessary, to address the admission and the effect of Brown's testimony thereon. And the Court did not need to, and thus did not, decide this disputed issue in its Memorandum Opinion and Order. See Memorandum Opinion and Order at 2 n.1, filed June 23, 2006 (Doc. 169).

Finally, Clovis argues that SICH has, throughout this case, required Clovis to disprove SICH's claims. See Response at 8. Clovis further contends that in some instances, SICH's claims and factual assertions raise difficult issues of credibility and veracity. See id. Clovis points out that

SICH and its senior counsel, Brian Thibodeau, took the position that Thibodeau had a conversation with Maggie Anderson of Clovis on April 20, 2002 in which Thibodeau asserted that he told Anderson that Tesseyman did not have any authority to bind coverage or accept premiums. See id. The assertion that Thibodeau had a conversation with Anderson supported the contention that Clovis had five days -- from April 20, 2002 until April 25, 2002 -- to notify PFS and that PFS could have taken steps to stop payment of its drafts.

Clovis maintains that, through intense discovery, it has proven that Thibodeau was not truthful in the affidavit he signed and filed with the Court, and that Thibodeau has admitted in deposition that he did not talk with Anderson on April 20, 2002 and, in fact, did not talk with her until April 24, 2002. See id. at 9. Clovis contends that Thibodeau has been forced to admit that, in his two conversations with Anderson on April 24 and April 25, 2002, he did not tell her that Tesseyman did not have authority to bind coverage or accept premiums. See id. Clovis asserts that it has eliminated four days in SICH's story. See id. Clovis contents that SICH again attempts to change its story and arguments, and in the Seventh Circuit's words, to flip flop, by seeking to withdraw and amend its admission to Request for Admission of Fact No. 98. See id.

The Court does not see how Thibodeau's revision in his version of events is determinative, if relevant, to the request for withdrawal of admission concerning the timing of the PFS draft. And the circumstances here are different than those in Banos v. City of Chicago, where the Seventh Circuit partially relied on the plaintiff's "flip flopping" to show prejudice. Here, SICH has not litigated an original theory of recovery, then abandoned that theory of recovery in favor of a new theory of recovery, required discovery on the new theory of recovery, only to abandon the new theory and attempt to revive the original theory of recovery. That prejudice has not occurred here. SICH is not

-15-

changing its theory of the case or forcing Clovis to abandon its defenses.

Because the Court finds that withdrawal and amendment of Admission No. 98 will promote and subserve the presentation of the merits of this case and that it will not prejudice Clovis, the Court will grant SICH's request.

**IT IS ORDERED** that Security Insurance Company of Hartford's Motion for Leave to Withdraw and Amend its Response to Request for Admission No. 98 of Defendant's First Requests for Admission is granted.

_____
UNITED STATES DISTRICT JUDGE

*Counsel:*

Paul R. Koller
Christopher M. Wolpert
Rodey, Dickason, Sloan, Akin & Robb, P.A.
Albuquerque, New Mexico

    *Attorneys for the Third-Party Plaintiff*

Briggs F. Cheney
Law Office Briggs F. Cheney
Albuquerque, New Mexico

    A*ttorneys for the Third-Party Defendant*